No. 83-144

IN THE SUPREME COURT OF THE STATE OF MONTANA

1984

---

STATE OF MONTANA,

        Plaintiff and Respondent,

  -vs-

WILLIAM JOHN GLADUE,

        Defendant and Appellant.

---

APPEAL FROM: District Court of the Eighth Judicial District,
In and for the County of Cascade,
The Honorable H. William Coder, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Michael S. Smartt, Great Falls, Montana

    For Respondent:

        Hon. Mike Greely, Attorney General, Helena, Montana
J. Fred Bourdeau, County Attorney, Great Falls,
Montana

---

Submitted on Briefs: January 26, 1984

Decided: April 19, 1984

Filed: APR 19 1984

*Ethel M. Harrison*

---
Clerk

Mr. Justice Frank B. Morrison, Jr. delivered the Opinion of the Court.

PROCEDURE:

Defendant William John Gladue appeals from judgment of conviction on counts of criminal mischief and attempted burglary entered by the District Court of the Eighth Judicial District. Gladue was sentenced to two concurrent ten (10) year terms for the felony convictions and received an additional five-year sentence for his status as a persistent felony offender.

FACTS:

The Great Falls Police Department received a call shortly after 4:00 a.m., May 23, 1982, reporting a burglary was in progress at the Sports Room Bar. The responding officer parked his patrol car and walked to a vantage point where he could observe the bar. He heard loud banging noises coming from the vicinity of the Sports Room Bar and witnessed two individuals on the roof of the business establishment, neither of whom he could identify. It appeared that one acted as a "lookout", while the other man was banging on the air conditioning vents. Likewise, the second responding officer observed two individuals on the roof of the subject building, but was unable to specifically identify either of them other than both were male.

The suspects made an attempted escape from the scene shortly after the second officer arrived. Both officers followed in pursuit and ordered the suspects to halt. One suspect (later identified as David Alan Lapier) stopped in response to this command and was arrested.

The chase and apprehension of the other suspect eventually resulted in the arrest of the defendant, William Gladue. Ignoring the policemen's order to halt, the second

2

suspect, who was carrying a crowbar, ran west from the Sports Room and out of sight around the corner of the neighboring Darigold building. The record reveals that when the pursuing officer rounded the corner seconds after the suspect had, the suspect was nowhere to be seen. The officer immediately determined the probable path of escape to be toward an area where numerous large, wooden shipping crates were stored. Two policemen attempted to contain the area around the crates and began searching the moving containers. Within fifteen minutes a Deputy County Sheriff arrived with his tracking dog. The dog searched the crates and discovered the defendant hiding in one of the shipping containers. Five to ten feet from where the defendant was discovered a tire iron was found on top of a crate.

Another Great Falls officer was dispatched to the scene for followup investigation, documentary photographing and analysis of evidence. While fingerprints and footprints were found at the scene of the crime, none were positively matched to the defendant.

At trial two witnesses testified for the defense: the defendant and Brooke Trainor, the defendant's girlfriend. Both defense witnesses agreed that the evening of May 22, 1982 started at the Gaslight Bar where the defendant and Brooke met friends including David Lapier, the first suspect arrested at the scene of the crime. Subsequently, the defendant and Trainor, along with David Lapier, attended an after-hours party in the home of another friend. Gladue and Trainor began to argue and then left the party bound for a Circle K store to purchase cigarettes. As a result of their continuing argument Gladue and Trainor parted company; consequently, Trainor's testimony does not corroborate the defendant's explanation of his activities prior to being

3

found in the moving crates. While waiting outside the store for Gladue, Trainor started talking with another man and ultimately left the Circle K with him in his car. The defendant claims he followed Trainor and her new companion on his motorcycle. He stated that he parked outside an apartment building he suspected they entered and waited. Gladue then saw a police cruiser. Thinking he would be arrested for either his intoxication or a delinquent traffic violation, the defendant ran across the street and hid in the moving crates where he was later detected by the police dog and arrested.

The appellant presents two issues:

ISSUE NO. I:

Is the evidence sufficient to sustain a conviction of the defendant for the crimes of attempt (burglary), a felony, and of criminal mischief, a felony?

ISSUE NO. II:

Does a prior, unrevoked deferred imposition of sentence for a felony constitute a previous "conviction" for purposes of Montana's persistent felony offender statutes; and, if not, was Gladue improperly determined to be a persistent felony offender and thus improperly sentenced as such?

The defendant contends that the State's evidence at trial was insufficient to sustain a finding of guilt. Defendant's position is: that police officers at the scene were unable to identify their suspects until after they were in custody; that, while fingerprints and shoe/boot/footprints were found at the scene of the crime, none of such prints were determined to belong to Gladue; that the record is devoid of evidence that Gladue was with the co-defendant Lapier at the time Lapier (admittedly) committed the crimes; that the evidence is uncontroverted that Gladue was

4

physically incapable of making an escape in the fashion that the police officers described; that it is pure speculation that the tire iron, found in the vicinity where Gladue was discovered, was the instrument used by the suspects in the perpetration of their crime; and, that the record does not show "purpose" in the attempted burglary. Consequently, the verdicts of guilty must be reversed and the charges against Gladue must be dismissed.

A recent synopsis of the case law concerning the issue of the sufficiency of evidence to sustain a conviction was enunciated in State vs. Graham (Mont. 1983), 40 St.Rep. 1499, 1503, ____ P.2d ____, as follows:

> "The test for the sufficiency of the evidence to support the judgment of conviction is whether there is substantial evidence to support the conviction, viewed in a light most favorable to the State. State v. Lamb (Mont. 1982), 646 P.2d 516, 39 St.Rep. 1021. The resolution of factual matters is for the jury, and if there is substantial evidence to support the judgment, this Court must affirm the decision of the jury. State v. Hardy (Mont. 1980), 604 P.2d 792, 37 St.Rep. 1. Disputed questions of fact and the credibility of witnesses will not be considered on appeal. State v. DeGeorge (1977), 173 Mont. 35, 566 P.2d 59."

Furthermore, the rule has long been established in Montana that use of circumstantial evidence is an acceptable and often convincing method of proving criminal intent. As we restated in State v. Pascgo (1977), 173 Mont. 121, 126, 566 P.2d 802 citing State v. Farnes, 171 Mont. 368, 558 P.2d 472:

> "The element of felonious intent in every contested criminal case must necessarily be determined from the facts and circumstances of the particular case, this for the reason that criminal intent, being a state of mind, is rarely susceptible of direct or positive proof and therefore must usually be inferred from the facts testified to by witnesses and the circumstances as developed by the evidence."

The jury considered the testimony and evidence presented along with the defendant's version of the incident and

5

concluded that the defendant committed the crimes. There was substantial evidence to support the jury's conclusion.

The defendant claims that his prior deferred imposition of sentence was erroneously considered a "conviction" and he was improperly classified as a persistent felony offender pursuant to section 46-18-501, MCA. In 1978 Gladue was adjudged guilty of two felony counts, burglary and theft. The district court judge gave Gladue a three-year deferred imposition of sentence. While the record reflects Gladue's successful completion and final termination of the deferred imposition of sentence, there is no evidence of record to indicate whether or not the defendant's guilty plea was withdrawn or the verdict of guilty removed, or the criminal charges dismissed from Gladue's record pursuant to section 46-18-204, MCA.

On appeal, the defendant maintains that even though this prior unrevoked, expired deferred imposition of sentence was not subjected to the dismissal provisions of section 46-18-204, this administrative oversite should not prevent him from the benefits afforded him if the charges against him had been dismissed upon proper motion.

This Court addressed the intent of the legislature in regard to deferred imposition of a sentence in the context of section 46-18-204, MCA:

> " . . . At the termination of the time of deferment or stayed imposition, section 95-2207, R.C.M. 1947, authorizes the court to accept a plea withdrawal or to strike the verdict of guilty and order the charge dismissed.
>
> "The passage of section 95-2207, R.C.M. 1947, demonstrates the intent of the legislature in regard to deferred imposition of sentence. If sentence were imposed or executed in any part, then the end advantage to the entire concept of the deferred sentence could not be attained and section 95-2207 would become inoperative." State v. Drew (1971), 158 Mont. 214, 217, 490 P.2d 230.

Accordingly, the sentencing issue is remanded to the district court for a hearing to determine whether defendant Gladue's prior, expired and unrevoked deferred sentence should be dismissed pursuant to 46-18-204, MCA. If the trial court determines that the charges should not be removed from his record then the persistent felony offender designation remains intact and the sentence unchanged. However, if the lower court allows the dismissal of charges for the previous 1978 felonies, then the defendant has no "conviction" as contemplated by the persistent felony offender statute and he shall be resentenced accordingly.

The conviction for defendant's commission of attempted burglary and criminal mischief is affirmed. The sentence based on designation of persistent felony offender is remanded for hearing.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices

7